UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

AMBRA McCAIN-ROBY,                          )
                                            )
            Plaintiff,                      )
                                            )
      v.                                    )      CASE NO. 1:05-cv-1157-DFH-TAB
                                            )
ELI LILLY AND COMPANY,                      )
                                            )
            Defendant.                      )

ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Ambra McCain-Roby worked as a chemist and quality control representative for defendant Eli Lilly and Company from May 2000 until her termination in December 2004. McCain-Roby claims that in discharging her, the defendant unlawfully discriminated against her on the basis of race in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. Under § 1981, she also claims the defendant retaliated against her because she complained of racial discrimination in the workplace. Finally McCain-Roby relies on the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.*, claiming the defendant retaliated against her for taking medical leave. Defendant Lilly denies McCain-Roby's allegations and has filed a motion for summary judgment on all claims. For reasons stated below, Lilly's motion for summary judgment is granted on all claims.

*Summary Judgment Standard*

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The motion should be granted so long as no rational fact finder could return a verdict in favor of the nonmoving party. See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, a court's ruling on a motion for summary judgment is akin to that of a directed verdict, as the question essentially for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. When ruling on the motion, the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences therefrom in that party's favor. *Id.* at 255. If the non-moving party bears the burden of proof on an issue at trial, that party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also *Silk v. City of Chicago,* 194 F.3d 788, 798 (7th Cir. 1999). The moving party need not positively disprove the opponent's case; rather, it may prevail by establishing the lack of evidentiary support for that case. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

*Facts for Summary Judgment*

In light of the summary judgment standard, the following facts are not necessarily true, but reflect the current record of evidence in the light reasonably most favorable to plaintiff McCain-Roby, giving her the benefit of conflicts in the evidence and favorable inferences from the evidence.

Defendant Eli Lilly and Company is an Indiana-based pharmaceutical company. In May 2000, Lilly hired plaintiff Ambra McCain-Roby as a chemist. Three years later, McCain-Roby accepted a position as a quality control ("QC") representative in Lilly's IndyDry Products Packaging Division. Her primary responsibility in this role was to investigate customer complaints. Her immediate supervisor was Cindy Pitt, a Caucasian. McCain-Roby herself was the only African-American in the department of six employees.

At some point during her tenure as a QC representative, McCain-Roby noticed a lack of involvement with the rest of her department. When she brought deviations from standard operating procedure to the attention of Pitt, the entire department, with the exception of McCain-Roby, would be involved in taking corrective action. She was excluded from department meetings, as well as from participating in audits, chain control proposals, and pre-approval inspections.

McCain-Roby testified she was treated differently than her co-workers in other ways.[1]  Unlike Caucasian co-worker Chris Paige, she was required to keep track of her days off in a formal manner.  In September 2004, Pitt issued McCain-Roby a formal written notice of unacceptable work performance.  Pitt listed four instances of unacceptable behavior:  (1) allowing her husband to use her ID card to enter restricted areas of Lilly's facility; (2) having her daughter at work one afternoon; (3) leaving an open bag of candy in an area where food and drink were prohibited; and (4) committing three parking violations.  According to McCain-Roby, other co-workers had committed one or two of these violations but had not been formally warned by Pitt.

In October 2004, following this formal warning, McCain-Roby lodged a complaint against Pitt with Lilly's hotline.  McCain-Roby expressed how she felt excluded from her department and singled out by Pitt's formal warning.  She expressed her belief that these two issues were attributable to racial discrimination.  Human Resources representative Michael Lakin was assigned to follow up on her discrimination complaint.

---

[1]McCain-Roby had a pay grade of 50.  She testified hearing "through word of mouth with the corporation and talking to other QC reps that the pay grade started at 52."  Pl. Dep. at 66.  Though plaintiff contends this pay differential is evidence of discriminatory treatment, her only evidence is inadmissible hearsay that cannot be considered on summary judgment.  See, *e.g.*, *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

In mid-October 2004, Pitt presented McCain-Roby with a Performance Improvement Plan ("PIP") that listed numerous areas for improvement. Because she disagreed with much of its content, McCain-Roby refused to sign the PIP. The PIP prompted McCain-Roby to file a racial discrimination complaint in November 2004 with Karen Probst from Lilly's Equal Employment Opportunity ("EEO") office. In early December 2004, Probst concluded that the evidence did not support McCain-Roby's discrimination claim.

During a check-up in late November 2004, Lilly physician Dr. Cindy Allen suggested McCain-Roby might be depressed. McCain-Roby began FMLA leave to deal with depression on December 1, 2004.

On December 3, 2004, while still on leave, McCain-Roby called Dr. Allen and Probst to inform them she was going back to Lilly to retrieve some FMLA paperwork. She failed to reach either of them on the phone and did not receive any approval to return to work while on leave. Nevertheless McCain-Roby went to Lilly's facility at 6 a.m. on Saturday, December 4, 2004. She first retrieved her FMLA paperwork. But she then made copies of hundreds of confidential Good Manufacturing Practices ("GMP") documents from Lilly's library, with the idea of using these documents to prove that the October 2004 PIP was unjustified.[2] After

_____

[2]A GMP document is "an original paper or electronic record (e.g. raw data, maintenance records, written observations), or an approved paper or electronic document (e.g. specification, IQ/OQ protocols, validation document, technical report) that has the potential to affect the safety, identity, strength, purity, or (continued...)

copying the documents from Lilly's library she went to the break room, where she was spotted by a co-worker.

Pitt was also at work early that morning. She learned that McCain-Roby was on the premises and then confronted her in the break room. When Pitt asked McCain-Roby to turn over the documents in her bag, McCain-Roby refused. Pl. Dep. at 220. Shortly thereafter a security guard and another employee arrived. According to the security guard's report, it took three separate requests to recover all the confidential documents in McCain-Roby's possession. Lakin Aff. Ex. G. According to the guard, McCain-Roby claimed at one point that she had only FMLA papers in her bag. Upon inspection, the guard found confidential documents. *Id.*

Lilly restricts access to GMP documents. Its written policy states: "The generation and use of photocopies of GMP documents is permissible under certain conditions and with certain requirements." Lakin Aff. Ex. B at 10. Its employee handbook also warns of immediate discharge if an employee removes company property without authorization, is insubordinate, or is dishonest. Lakin Aff. Ex. E.

---

[2](...continued)
quality of a product." Lakin Aff. Ex. B at 3. These documents serve as primary evidence that required activities have been performed and that established specifications have been met. Lakin Aff. ¶ 8.

On or about December 10, 2004, Lakin, Pitt, manager Pat Good, site head D.R. Foley, Lilly's Human Resources Legal group, and Lilly's EEO group all agreed to terminate McCain-Roby because she:  (1) made unauthorized copies of GMP documents, (2) attempted to take these documents off Lilly property, and (3) denied having these documents when confronted.  A week later, McCain-Roby filed her charge of discrimination with the EEOC.

*Discussion*

I.      *Title VII Discrimination Claim*

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2.  A plaintiff bringing an employment discrimination claim under Title VII may prove her claim using either or both of the "direct" and "indirect" methods of proof.  See *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003).  McCain-Roby relies on only the direct method.

Accordingly, plaintiff must offer either direct or circumstantial evidence indicating that her termination was motivated by racial discrimination.  *Id.* at 1061.   While  direct  evidence  "essentially  requires  an  admission  by  the decisionmaker that his actions were based on the prohibited animus," *Radue v.*

*Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000), a plaintiff can still prevail under the direct method by assembling a "convincing mosaic" of circumstantial evidence pointing to a defendant's discriminatory motive.  *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994).

Such circumstantial evidence can include, among other things, "evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment." *Id.* at 736.  Whether circumstantial or not, this evidence must allow a rational trier of fact to "reasonably infer that the defendant had fired the plaintiff because the latter was a member of a protected class." *Id.* at 737.

A.      *Circumstantial Evidence of Racial Discrimination*

McCain-Roby claims that, as the only African-American employee in her department, she was treated worse than her co-workers in a number of ways.  She accuses Pitt of systematically excluding her from department meetings, as well as corrective actions, audits, chain control proposals, and pre-approval inspections. There is some indication that Pitt was quicker to issue McCain-Roby a formal warning letter than other members of the department.[3]  Unlike one Caucasian co-

---

[3]Though McCain-Roby points out that other co-workers engaged in some of
(continued...)

worker, McCain-Roby was asked to keep track of her schedule and to report her planned days off.  Plaintiff also claims Pitt herself regularly took copies of GMP documents off Lilly property without an authorized business purpose, but was never punished.[4]

McCain-Roby's evidence is sufficient to show that she did not get along with her immediate supervisor, and that for some reason Pitt singled the plaintiff out. However, nothing in this mosaic suggests the reason for this friction was because McCain-Roby was African-American.  McCain-Roby notes that she was the only African-American in her department.  While the evidence is not inconsistent with race being the reason why Pitt singled her out, there simply is no evidence that would allow a reasonable inference, as opposed to speculation or guesswork,  that Pitt was hostile to her or seeking to get rid of her *because* of race.  See *Luks v.*

---

[3](...continued)
the behavior that she was cited for in the September 2004 warning letter, none of these co-workers engaged in any more than two of those behaviors, much less the four violations listed in the letter.  See *Burks v. Wisconsin Dept. of Transportation*, 464 F.3d 744, 752 (7th Cir. 2006) (a similarly situated co-worker must have "a comparable set of failings").

[4]The record gives no indication of how McCain-Roby might have known that Pitt was not authorized to take GMP documents off Lilly property.  This alone would be reason enough to reject plaintiff's allegations on this point.  See *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003) (rejecting allegations of discrimination when plaintiff failed to cite specific facts based upon personal knowledge or the testimony of others).  Even accepting McCain-Roby's claim as true, McCain-Roby's supervisor cannot properly be considered a comparable employee for these purposes.  See *Walker v. Board of Regents of the University of Wisconsin*, 410 F.3d 387, 396 (7th Cir. 2005) (the fact that other employees received systematically better treatment only has evidentiary import if those employees "are directly comparable to [plaintiff] in all material respects").

*Baxter Healthcare Corp.*, 467 F.3d 1049, 1054 (7th Cir. 2006) (evidence indicating that supervisor wanted to get rid of three employees who happened to be the oldest in the supervisor's chain of command does not establish, in and of itself, that they were fired because of their age).  In other words, there is no racial dimension to the mosaic plaintiff has assembled.  Without something more, a reasonable jury could not conclude that McCain-Roby's discharge was the result of racial discrimination.

B.      *Defendant's Stated Reasons for Terminating McCain-Roby*

Lilly claims it terminated McCain-Roby because she made an unauthorized attempt to copy and take hundreds of confidential GMP documents from Lilly property and was dishonest when questioned about the documents.  The parties have briefed whether Lilly's stated reasons were honest or pretextual.  This inquiry is more familiar when a plaintiff relies on the burden-shifting indirect method of proof that has evolved under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The court assumes that evidence of a pretext for disciplining or firing an employee may also be relevant to a "mosaic" case, which tends to show that the boundaries between these different methods of proof can be blurry in some cases.

The undisputed facts show that early on December 4, 2004, McCain-Roby entered Lilly's facility while she was supposed to be on FMLA leave.  Pitt and a Lilly security guard confronted McCain-Roby after she took hundreds of copies of confidential GMP documents from Lilly's library.  McCain-Roby refused to comply

-10-

when Pitt initially asked her to turn over the documents.  The guard's subsequent report notes that after McCain-Roby finally did hand over some of the documents, she denied having any more.  Lakin Aff. Ex. G.  Upon inspection of plaintiff's bag, however, the security guard reported discovering more GMP documents.  *Id.* Plaintiff does not claim she received authorization for her actions.  Within six days of this incident, four managers, Lilly's human resources legal group, and Lilly's Equal Employment Opportunity group together agreed McCain-Roby's attempt to remove the confidential documents warranted termination.

"As has been regurgitated *ad nauseum*," the courts do not act as "a 'super personnel review board' that second-guesses an employer's facially legitimate business decisions."  *Culver v. Gorman & Co.*, 416 F.3d 540, 547 (7th Cir. 2005) (reversing summary judgment for employer on retaliation claim).  "An employer's explanation can be foolish or trivial or even baseless so long as it honestly believed the proffered reasons for the adverse employment action."  *Id.*  Though McCain-Roby raises a number of facts, none would allow a reasonable jury to find that Lilly's stated reasons for her termination were false.  Plaintiff claims she previously took GMP documents home without suffering any adverse consequences.  However she acknowledged that her 2003 off-site use of GMP documents was approved by supervisors, unlike her actions in December 2004. Pl. Dep. at 242.  Plaintiff alleges that Pitt regularly took copies of GMP documents off Lilly property without authorization.  This evidence amounts to inadmissible speculation, however, for the record gives no indication how McCain-Roby might

have known whether Pitt obtained approval prior to taking the documents.   See

*Adams,* 324 F.3d at 939.

Plaintiff also notes that Lilly's written policy against copying GMP documents does not explicitly require employees to have an "authorized business purpose.'" Lilly's written policy states:  "The generation and use of photocopies of GMP documents is permissible under certain conditions and with certain requirements."  Lakin Aff, Ex. B at 11.  The court's role is not to interpret the precise meaning of Lilly's policy.  The operative question is instead whether Lilly's decision-makers honestly believed McCain-Roby deserved to be fired because she copied and tried to remove confidential GMP documents without authorization. Though phrased broadly, Lilly's policy provides no basis from which to infer pretext.

Finally, several decision-makers were involved in the decision to terminate McCain-Roby.  While tension may have existed with her immediate supervisor, there was no record of such animosity between McCain-Roby and any of the other decision-makers.  No reasonable jury could find from the evidence here that Lilly's stated reasons were false or that it fired McCain-Roby because of her race.

II.      *Section 1981 Discrimination and Retaliation Claims*

McCain-Roby also claims that Lilly discriminated and retaliated against her in violation of § 1981.  Section 1981 provides in relevant part:  "All persons within

the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . includ[ing] the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a) & (b).  Claims of disparate treatment in employment under § 1981 are analyzed in the same way that Title VII claims are.  *Bratton v. Roadway Package System, Inc.*, 77 F.3d 168, 176 (7th Cir. 1996).   For the same reasons that McCain-Roby's Title VII discrimination claim cannot survive summary judgment, her § 1981 discrimination claim fails as well.

Nor can plaintiff maintain her separate § 1981 claim based on retaliation. McCain-Roby alleges that her discharge was motivated by the fact that she complained to Lilly's EEO and HR offices about discrimination in the workplace. The Seventh Circuit has determined that § 1981 "encompasses only racial discrimination on account of the plaintiff's race and does not include a prohibition against retaliation for opposing racial discrimination." *Hart v. Transit Management of Racine, Inc.*, 426 F.3d 863, 866 (7th Cir. 2005).  Section 1981 simply is not the vehicle by which plaintiff can seek redress for Lilly's allegedly retaliatory conduct.

III.    *FMLA Retaliation Claims*

McCain-Roby also claims she was fired in retaliation for exercising her rights under the FMLA.  The FMLA "provides eligible employees of a covered employer the right to take unpaid leave for a period of up to twelve work weeks in

any twelve-month period for a serious health condition as defined by the Act."
*King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999).  Upon return
from FMLA leave, "the employee is entitled to be reinstated to the former position
or an equivalent one with the same benefits and terms of employment that existed
prior to the exercise of the leave."  *Id.*  Under the FMLA, employees are afforded
protection in the event they are discriminated against for exercising their rights
under the Act.  29 U.S.C. § 2615(a)(1) & (2).

Plaintiff's claim of FMLA retaliation is evaluated in the same way claims of
retaliation are evaluated under other employment statutes.   See *Buie v.
Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir. 2004).  The question is whether
the plaintiff can show her employer's actions were motivated by an impermissible
retaliatory animus.  See *Horwitz v. Board of Education of Avoca School District No.
37*, 260 F.3d 602, 616 (7th Cir. 2001).  As with her other claims, plaintiff proceeds
under the direct method and attempts to establish FMLA retaliation with a mosaic
of circumstantial evidence.  This mosaic, however, consists of but one tile.

McCain-Roby notes that Lilly terminated her ten days after she first took
leave and six days after she was discovered taking FMLA and GMP documents
from work.  Suspicious timing certainly can be one part of a convincing mosaic
of retaliatory intent.  See *Troupe v. May Dept. Stores Co.*, 20 F.3d 735, 736 (7th
Cir. 1994).  However suspicious timing is almost never enough by itself to
establish a prima facie case of retaliation.  *Pugh v. City of Attica*, 259 F.3d 619,

630 (7th Cir. 2001) ("timing of an action, without more, is insufficient to establish the protected activity as a motivating factor").  The Seventh Circuit has "never said that [temporal proximity] is dispositive in providing or disproving a causal link." *Sitar v. Indiana Dept. of Transportation,* 344 F.3d 720, 728 (7th Cir. 2003).

The undisputed facts here show that McCain-Roby had no problem obtaining FMLA leave in the first place.  Upon taking time off, no one from Lilly ever questioned her use of leave to deal with depression or pressured her to return to work.  She was fired after the events set forth above, in which, while on FMLA leave she returned to work and surreptitiously copied and tried to remove confidential documents, and then lied to the security guard who questioned her about the documents.  Without something more, there is no circumstantial evidence from which a reasonable jury could conclude that Lilly terminated McCain-Roby because she exercised her FMLA rights.

*Conclusion*

For reasons stated above, the court GRANTS defendant's motion for summary judgment.  Final judgment shall be entered accordingly.

So ordered.

Date: December 20, 2006

_____
DAVID F. HAMILTON, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Ellen E. Boshkoff
BAKER & DANIELS
ellen.boshkoff@bakerd.com

Adrienne Franco Busby
BAKER & DANIELS
afbusby@bakerd.com

Anna L. Buschmann
HASKIN LAUTER LARUE & GIBBONS
abuschmann@hlllaw.com

Stuart R. Buttrick
BAKER & DANIELS
stuart.buttrick@bakerd.com

Denise K. LaRue
HASKIN LAUTER LARUE & GIBBONS
dlarue@hlllaw.com